|,DALEY, Judge.
This appeal concerns plaintiff East Jefferson Hospital’s suit against defendant Able Fur Company for payment of decedent Patterson Milligan’s medical bills. Milligan was part owner and employee of the defendant, and suffered a fatal brain hemorrhage while at work. East Jefferson Hospital contends Able Fur is liable for medical expenses incurred by Mr. Mil-ligan because he suffered an on-the-job injury. The trial court found insufficient evidence of an on-the-job injury, and ruled in favor of Able Fur. East Jefferson Hospital appeals, arguing that the evidence is sufficient to show a workplace accident. We affirm.
Patterson Milligan was at work storing fur coats on May 19, 1997. He was found collapsed at his computer, and was transported to East Jefferson Hospital, where it was determined he suffered a massive cerebral hemorrhage in the pons area of the brain stem. He did not regain consciousness, and died on June 13, 1997. Milligan had a previous history of cardiac and coronary artery disease, having had an Eaortic valve replacement and triple bypass surgery approximately 6 years earlier. He *420 was required to take Coumadin, a blood thinner, daily for the rest of his life. Analysis
It is the trial court’s function to determine the weight to be accorded medical and lay testimony in a workers’ compensation claim for award of disability benefits, and its factual determination should not be disturbed on appellate review unless it is clearly wrong and trial judge has committed manifest error. Starkman v. Munholland, United Methodist Church, 97-661 (La.App. 5 Cir. 1/14/98), 707 So.2d 1277.
LSA-R.S. 23:1021 contains the following pertinent definitions:
(1) “Accident” means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
(7) (a) “Injury” and “personal injuries” include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted.
(e) Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
Though the decedent suffered a perivas-cular event, the dispute involves whether it was caused by an injury, a bump on the head as reported by his wife, rather |4than extraordinary physical work stress. Therefore, the provisions of LSA-R.S. 23:1021(7)(e) do not apply to this factual situation unless there is insufficient evidence of “injury by violence to the physical structure of the body.”[1]
It is the claimant’s burden to prove by a preponderance of the evidence that an accident in the course and scope of employment occurred. This burden of proof remains the same in an unwitnessed accident.
A worker’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged accident. (Cite omitted.)
Corroboration of the worker’s testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence. (Cite omitted.)
In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent “circumstances casting suspicion on the reliability of this testimony.” (Cite omitted.)
Kortz v. Colt Energy Services, Inc., 97-159 (La.App. 5 Cir. 7/29/97), 698 So.2d 460.
Milligan’s wife gave a statement to the emergency room doctor that her husband had called her from work that morning, had reported hitting his head, and asked *421 her to come help him as he was not feeling well. Apparently the incident was unwit-nessed. Approximately 45 minutes after that phone call, Milligan was found slumped over at his computer, unconscious. Mrs. Milligan gave the same information to Able Fur, and testified regarding the phone call at the trial. She said that he appeared normal when he left for work. He called her and said he didn’t feel good, he had hit his head and had a headache, and could she come.
Dr. Adams, the treating emergency room neurosurgeon, recalled receiving this | ¡¡history from Mrs. Milligan at some point, but could not exactly recall when. He stated that as far as the treatment for a brain stem hemorrhage was concerned, the history was not relevant. Dr. Adams’ primary concern at the time was trying to save Mr. Milligan, but he determined that the hemorrhage was so massive that the decedent’s recovery was not a possibility. Dr. Adams felt that decedent’s hemorrhage into that area of the brain stem was a direct result of the blow to the head, because of the fact that he was taking the blood thinning agent Coumadin. He explained the effects of Coumadin, which prevents the blood from clotting. He noted that the decedent’s Coumadin levels (prothrombin time), which were tested upon his admission to the hospital, were within accepted therapeutic levels (18.5). He discounted high blood pressure (hypertension) as a cause of the hemorrhage, noting that Milligan did not present a history of hypertension, although other medical records indicate that he did have a history of high blood pressure. Dr. Adams felt that the high blood pressure exhibited by Milligan upon admission was a result, rather than a cause, of the brain hemorrhage. Dr. Adams said that if Mrs. Milligan’s history was true, it was the most likely cause of the hemorrhage.
Dr. Roger Smith, the consulting neurosurgeon, testified by deposition. He stated that he saw no evidence of head trauma, and had not received that history. The doctor saw no scalp lacerations, contusions, or other evidence. Dr. Smith opined that with Milligan’s history of hypertension, anticoagulation, and heart disease, it was more likely than not that the brain hemorrhage was spontaneous. He said that he had never seen an isolated pontine hemorrhage caused strictly by a blow, although such a result was not necessarily inconsistent with trauma. It was much more likely a spontaneous event.
Dr. Monte, Milligan’s treating internist, testified that he monitored Milligan’s | ^Coumadin levels, although the decedent was not very good about regular appointments. He felt that with Milligan’s medical history, he was at increased risk for spontaneous bleeds. He stated that at age 47, Milhgan’s vascular disease was so severe that he had a life expectancy of only 10 more years.
The defendant’s medical witness, Dr. Weisburg, a neurologist, testified. He reviewed Milligan’s case at the request of the defendant (he was not a treating physician). He said that the decedent had a history of cardiac disease (the aortic steno-sis that precipitated the valve replacement, and coronary artery disease resulting in the bypass). Dr. Weisburg opined that the brain hemorrhage was non-traumatic in origin, and was possibly caused by the decedent’s cardiac disease or hypertension, although he admitted that Milligan’s medical records did not show hypertension. He also based his opinion on the fact that there was no evidence of head trauma, such as an abrasion or bruise at the point of impact. Dr. Weisburg also stated that because the pons is located deep within the brain, it was unlikely to develop a hemorrhage as the result of a trauma, unlike other areas of the brain situated close to the surface. Finally, Dr. Weisburg noted Milligan’s records indicated that he had not seen his doctor in approximately two years, which was not adequate for a patient on Coumadin therapy. He stated that patients who take Coumadin must be closely monitored by their doctors because of the potential risks.
In this situation, we do not have the testimony of the claimant because he died. *422 The only evidence of a work related accident is Mrs. Milligan’s testimony that the decedent called her and reported that he bumped his head. The medical notes from East Jefferson hospital and testimony of the treating doctors state that no evidence of trauma to the head was found. So while Mrs. Milligan’s statement is uncontrovert-ed, it is also uncorroborated by any objective medical evidence or factual evidence.
17After our thorough review of the evidence and exhibits in the record, we cannot say the trial court was manifestly erroneous in concluding that there is insufficient evidence of a work related accident.
Nor is there clear and convincing evidence that Mr. Milligan suffered from extraordinary physical work stress on that day that caused the hemorrhage. An employee of Able Fur, who arrived that morning after Mr. Milligan was found comatose and the paramedics had been called, guessed from the work order tickets Mr. Milligan had filled out that the morning’s work had been very busy. However, this falls short of establishing extraordinary physical work stress.
Moreover, additionally the plaintiffs would have to establish by clear and convincing evidence that the physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death. Given Mr. Milligan’s documented history of cardiac and coronary artery disease and use of Coumadin, more evidence points to this preexisting condition as the most likely cause of decedent’s brain hemorrhage than anything else in the record.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.

. LSA-R.S. 23:1021(7)(a).