2EDWARDS, Judge.
Defendant, Parish of Jefferson, appeals a decision of the Office of Workers’ Compensation which held that the claimant, George Hoffman, developed post traumatic seizure disorder as a result of a work-related accident and is entitled to benefits as a result of the injury. The judgment also cast defendant in judgment for $2,000.00 in statutory penalties pursuant to LSA-R.S. 23:1201. We affirm in part, and amend in part, for the following reasons.
Plaintiff testified that he was at work in his office in the Yenni Office Building on September 5, 1991, when suddenly and without warning a vehicle crashed into the building. The plaintiff was thrown against the opposite wall where he fell, unconscious. He was transported to East Jefferson Hospital and was treated for head injuries by Dr. Wilensky. About 3 years later, in August, 1994, he had a seizure while in Mississippi, during which he fell over and became disoriented. Since that time he has suffered three more similar seizures. [sHe testified that he had been diagnosed with diabetes about two years before this incident, but had no weak spells or seizures between the diagnosis and the accident in September, 1991. Dr. Wilensky prescribed Dilantin for post traumatic seizure disorder in September of 1994; however, Mr. Hoffman discontinued its use shortly afterward. Plaintiff underwent four EEG’s from 1991 to 1997; on Dr. Wilensky’s advice, he began to take Dilantin again in March of 1997 after which time the seizures were controlled. The four seizures occurred during the time Mr. Hoffman was not on that medication, *763 from 1994 to 1997. However, in January, 1998 plaintiff had a dizzy spell, and he admitted that he was unsure whether he remembered to take his medication on the day of the most recent dizzy spell. He also testified that he was recovering from the flu at that time and the dizzy spell may have been attributable to that fact.
Mr. Hoffman further testified that he had another work related accident in 1989 in which he was electrocuted. As a result of that accident, his blood pressure went up to 198 over 117 and his heartbeat was irregular. He was given a channel blocker and a beta blocker, and was also given medication for the high blood pressure, which he sometimes fails to take. However, Mr. Hoffman denied that the seizures he has experienced since 1994 are related to the high blood pressure.
The record contains the deposition testimony of Dr. Michael Wilensky, a neurologist who treated Mr. Hoffman as a result of the accident in 1991. According to his records, Mr. Hoffman arrived at the hospital with a head injury sustained when a vehicle crashed into a Jefferson Parish building where he was seated at work at his desk. He had a concussion with a brief loss of consciousness. An EEG and a CAT scan performed at the time produced normal | ¿readings. He was seen on a follow up for neck pain and headaches, and was also seen by other doctors for back pain. He received medication and rehabilitation for his cervical and lumbar problems.
Mr. Hoffman returned to Dr. Wilensky in 1994 and reported a spell in which he passed out. Dr. Wilensky performed a second EEG which showed an abnormal slowing of the brain waves. Dr. Wilen-sky stated that a period of three years between the head trauma and the first episode would not be unusual where a scarring of the brain had developed subsequent to the head trauma. Mr. Hoffman had two other EEG’s within three months which all showed the same abnormality. A CAT scan conducted during this period showed no signs of a stroke. Dr. Wilensky’s diagnosis was post traumatic seizure disorder for which he prescribed Dilantin. The physician admitted that EEG results are subject to interpretation, however, it was his medical opinion based on the head injury sustained, the three EEG’s showing the same abnormality, and the history of spells suffered by the patient that Mr. Hoffman has post traumatic seizure disorder. Dr. Wilensky explained that the normal EEG taken shortly after the accident was consistent with this view if a subsequent scarring caused the disorder.
The defense presented evidence from Dr. Walter Truax, a neurologist who testified that he first saw Mr. Hoffman on September 14, 1992 when he came for an independent medical examination ordered by the insurance company investigating the incident in question. At that time Mr. Hoffman complained of pain in the low back, neck, shoulder, and knee. Dr. Truax also saw claimant on January 11, 1993 and October 26, 1994 for independent medical evaluations in connection with the 1991 accident.
Is At the October 26,1994 visit, Dr. Truax evaluated claimant for post traumatic seizure disorder. According to Dr. Truax’s testimony, Mr. Hoffman’s medical records show that an EEG and CAT scan of the brain done in 1991 after the accident were both normal. Mr. Hoffman was a diabetic on insulin and he was taking Dilantin for post traumatic seizure disorder.
Dr. Truax conducted a neurological examination and found no indication of post traumatic epilepsy. He opined that the episodes were more like fainting spells which could be attributed to a transient drop in blood pressure or blood sugar level. Dr. Truax explained that a seizure is the result of a head injury, and usually occurs within a year of the injury; consequently, he did not find the spells as reported by Mr. Hoffman consistent with post traumatic seizure disorder. While *764 the normal EEG taken after the accident did not indicate brain injury, Dr. Truax reviewed the subsequent EEG’s and found them to be abnormal in that there was a slowing of the wave forms in both temporal regions of the brain, a condition which he found to be non-specific and not diagnostic of a seizure. Dr. Truax testified that the abnormalities could be caused by scarring of the brain or by a bio-chemical disturbance.
Dr. Truax opined that the episodes were not seizures because the normal EEG immediately after the accident did not indicate a brain injury. Further, he based his opinion on the head injury sustained by plaintiff, the three EEG’s and the history of spells. Additionally, the episodes did not begin until three years after the accident and continued even after Mr. Hoffman was on Dilantin. Dr. Truax conceded that post traumatic seizure disorder is a clinical diagnosis in which the EEG is but one tool, and that a patient can have a seizure without a spiking on an EEG.
Un brief to this Court, defendant asserts the trial court was manifestly erroneous in its findings of fact that the claimant suffers from post traumatic seizure disorder and, in the alternative, that any such condition is causally related to the 1991 accident. Defendant further avers the trial court erred as a matter of law in awarding the claimant statutory penalties.
ANALYSIS
The claimant in a workers’ compensation action bears the burden of establishing a causal link between the accident and the subsequent disabling condition. Wooley v. E.J.D. Builders, Inc. 94-955 (La.App. 5 Cir. 1/30/96), 668 So.2d 1221, writ denied, 96-0506 (La.4/8/96), 671 So.2d 338. Causation is generally the ultimate fact to be decided by the court after weighing all the evidence. Wooley v. E.J.D. Builders, Inc., supra. Recently, our Supreme Court has stated the standard of review of factual findings in a workers’ compensation matter. In Chais-son v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375, 380, the Court stated:
Factual findings in worker’s compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Where there are two permissible views of the evidence, a fact-finder’s choice between them can never be manifestly erroneous or clearly wrong. “Thus, ‘if the [factfinder’s] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’ ”.
[Citations omitted].
The trial court chose to give more weight to the opinion of Dr. Wilen-sky than that of Dr. Truax. It is the trial court’s function to determine the weight to be accorded the medical and lay testimony. Starkman v. Munholland United 7Methodist Church, 97-661 (La.App. 5 Cir. 1/14/98), 707 So.2d 1277. The trial court must examine the totality of the evidence, both medical and lay, in making its determination of whether to grant an award for disability. Simpson v. S.S. Kresge Co., 389 So.2d 65 (La.1980); Starkman, supra. This factual determination should not be disturbed on appellate review unless it is clearly wrong and the trial judge has committed manifest error. Id. The manifest error rule extends to credibility determinations based upon conflicting medical testimony. Id.
We have reviewed the evidence and the factual findings of the court using the above standard and find no manifest error in the trial court’s findings that this claimant suffers from post traumatic seizure disorder, and that the condition is causally *765 related to the 1991 accident. Accordingly, we affirm that portion of the judgment.
The final assignment concerns the award of penalties. LSA-R.S. 23:1201 as it read at the time of the accident provided that failure by the employer to pay workers’ compensation benefits timely will result in the assessment of a penalty. LSA-R.S. 23:1201F(2) provides that the penalty shall not apply if the claim is-reasonably controverted or if such nonpayment results from conditions over which the employer has no control.
The finding of arbitrary and capricious refusal to pay compensation is an issue of fact to be reviewed under the manifest error rule. Wooley v. E.J.D. Builders, Inc., supra. Defendant argues that the claim was reasonably controverted because the condition did not manifest until three years after the injury and that Dr. Wilensky’s diagnosis was not “hard and fast”.
[ ¡/Whether the employer’s act is arbitrary, capricious or without probable cause depends upon the facts existing and known to the employer at the time its decision as to benefits was made. Bynum, v. Good News Const., 96-41 (La.App. 5 Cir. 5/28/96), 675 So.2d 1203, writ denied, 96-1693 (La.10/4/96), 679 So.2d 1388; Chateau v. City of Kenner, 97-1006 (La.App. 5 Cir. 5/13/98), 712 So.2d 256. In the present case, the evidence shows that it was the opinion of Hoffman’s treating physician since 1994 that plaintiff suffered from a seizure disorder connected to the 1991 accident. The possibility of alternate etiology as expressed by Dr. Truax did not in this case reheve the employer of his obligation to investigate the claim further. Given the nature of the injury involved and our review of the evidence presented (including the testimony of claimant himself) we do not find manifest error in the determination that the employer was arbitrary and capricious in not paying benefits.
However, we note that the law in effect at the time of the injury did not provide the same -penalties as the current version. The law in effect at the time of the injury controls in workers’ compensation cases. Mackie v. Coast Quality Construction, 95-668 (La.App. 5th Cir. 12/13/95), 666 So.2d 1173, 1175, writ denied, 96-0687 (La.5/10/96), 672 So.2d 922; Manuel v. River Parish Disposal, Inc., 96-302 (La.App. 5 Cir. 10/1/96), 683 So.2d 791; Kortz v. Colt Energy Services, Inc., 97-159 (La.App. 5th Cir. 7/29/97), 698 So.2d 460. In 1991, the statute read:
E. If any installment of compensation payable without an order is not paid within the time period provided in Subsections (B), (C), or (D) of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the [ gemployee’s right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay. No worker’s compensation insurance policy shall provide that this sum shall be paid by the insurer if the director or the court determines that the twelve percent additional payment is to be made by the employer rather than the insurer. Any additional installment of compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee.
Plaintiff is entitled to penalties in the amount of 12% of all unpaid compensation to which he was entitled.
DECREE
For the foregoing reasons, we affirm the judgment on appeal insofar as it finds de *766 fendant liable for benefits, and that defendant was arbitrary and capricious. We amend that portion of the judgment which grants penalties in the amount of $2000.00 to reflect that penalties are awarded in the amount of 12% of the unpaid benefits.
AFFIRMED IN PART; AMENDED IN PART.
GOTHARD, J., concurs in part and dissents in part.