JgSUSAN M. CHEHARDY, Judge.
In this workers’ compensation case, Holiday Retirement Corporation and its insurer, Liberty Mutual Insurance Company, appeal the judgment ordering them to pay the claimant, Tammy Tuckerson, supplemental earnings benefits, finding defendants were arbitrary and capricious in refusing to pay benefits, and awarding claimant penalties and attorney fees. For the following reasons, we reverse.
Tammy Tuckerson was working as a facility chef for defendant, Holiday Retirement Corporation(“Holiday”), when she began experiencing pain in her right arm and wrist on or about December 25, 2002. On June 9, 2003, claimant sought medical treatment for the pain in her right wrist and hand. According to her medical records for June 9, 2003, claimant reported to her physician, Dr. Winkler, that she had experienced pain and swelling in her right wrist for five months. She reported no specific injury or trauma to her wrist but explained that, as a chef, she used her wrists and hands “a lot.” Dr. Winkler’s medical plan for claimant was over-the-counter anti-inflammatory medication, a wrist splint, and hot/cold therapy. He did not diagnose Tuckerson’s disorder because he wanted to rule out |scarpal tunnel syndrome. Dr. Winkler did not place work restrictions on Tuckerson. Dr. Winkler advised her to return for treatment as needed.
On June 18, 2003, Tuckerson returned to Ochsner Clinic with continued complaints *629 of right wrist pain. -On that date, Dr. Roche-Green, another general practitioner, examined Tuckerson and determined that she was unable to work due to her “suspected carpal tunnel syndrome.” Dr. Roche-Green prescribed anti-inflammatory medication and six weeks of physical therapy.
On July 30, 2003, after a follow-up visit, Dr. Roche-Green instructed claimant to continue physical therapy and anti-inflammatory medication, referred claimant to an orthopedist, and released claimant to return to work on “sedentary duty.” According to the Work Status Summary signed by Dr. Roche-Green, sedentary duty could be defined as “lifting 10 lbs. maximum & occasionally lifting and/or.carrying articles such as dockets, ledgers & small tools.... Jobs are sedentary if walking & standing are required only occasionally & other sedentary criteria are met.” It is undisputed that Holiday, claimant’s employer, paid her indemnity benefits from June 18, 2003 until July 31, 2003.
On August 1, 2003, claimant returned to work. Kathy Tan, who was General Manager of defendant’s facility at that time, presented claimant with a written temporary transitional duty plan of tasks including cleaning and restocking the coffee bar; cleaning chairs, handrails, and mirrors; dusting the piano, common areas, pictures, silk plants; filling salt and pepper shakers and sugar and creamer bowls; folding laundry; polishing silverware; stocking housekeeping carts;, updating menu cards; and cleaning windows and tracks throughout the facility. The plan specifically restricted the claimant from lifting more than ten pounds. The claimant and general manager both signed the plan. Before the claimant began work that day, the general manager required approval of the plan by Dr. Roche-Green. That day, claimant had the written plan approved by Dr. Roche-tGreen.4[1] Claimant performed several of the tasks that day as evidenced by the checklist that claimant completed, which Holiday introduced at trial. It is undisputed that claimant did not indicate to the facility manager that she was unable to complete the tasks or that the tasks were outside of the scope of her restrictions.
On August 3, 2003, claimant returned to work and tendered her resignation.[2] In the handwritten letter to her employer dated August 3, 2003, claimant stated,
1, Tammy Tuckerson, am terminating my position as Facility Chef effective immediately. I feel a 2 week notice is not needed given the circumstances. The Landing at Behrman Palaee[sic] has already hired an acting chef to replace me while out on leave and I understand he’s doing a great job so keeping him in place would be best.
On August 6, 2003, claimant had an appointment with Dr. Peter Stevens, an orthopedist. According to her medical records, claimant reported to Dr. Stevens that she was working sedentary duty. She did not report that she had resigned. Dr. Stevens maintained claimant on modified duty. On September 2, 2003, claimant had a follow-up with Dr. Roche-Green. Dr. Roche-Green noted that claimant’s carpal tunnel syndrome was “improved.” She reported to Dr. Roche-Green that she had changed jobs and asked to “transfer” her care to Ocshner Clinic in Baton Rouge “due to move in her location of her em *630 ployment.” Dr. Roche-Green released claimant to light duty.
On August 14, 2003, however, claimant filed a disputed claim for compensation because her wage benefits were terminated on August 1, 2003. Holiday and its workers’ compensation insurer, Liberty Mutual Insurance Company(“Liberty”), answered and admitted that claimant was injured within the course of her employment and, further, that compensation of $416.00 a week had been paid from June 18, 2003 through July 31, 2003. Holiday denied that the [.^claimant was temporarily or permanently disabled or had lost earning capacity. Holiday asserted that Holiday could accommodate both sedentary and light duty restrictions, but claimant, who had by that time been released to light duty, had resigned on August 3, 2003.
At trial, the witnesses were claimant and Kathy Tan, General Manager of Holiday’s facility where claimant was employed. Claimant and Holiday offered joint exhibits including doctors’ notes, work releases, and claimant’s resignation letter. Holiday also presented a copy of the written temporary transitional duty plan and the claimant’s transitional duty task checklist from August 1, 2003.
At trial, claimant stated that, after she returned to work on August 1, 2003, she realized that “the duty list that [Kathy Tan] gave me was nowhere near sedentary duty.” Claimant reported that she did not want to “take the chance of being terminated” so she did the tasks on the duty list. She admitted that she did not complain to her employer that the modified duties were outside of her restrictions.
Claimant also reported that she could have done paperwork, training of cooks, and “lots of things that could have been done for the chef duty outside of the cleaning.” Further, in response to a confusing question during trial, claimant apparently admitted at the hearing that she had been working after her resignation from Holiday.
Kathy Tan testified that the transitional duty plan tasks were “limited duty” tasks. Tan was not aware of “limited duty” tasks that fell within the chefs regular job description. Further, Tan testified that, before claimant returned to work, Tan supplied claimant’s physician with a copy of the chefs job description. Tan also stated that claimant did not indicate that the duties she performed when she returned to work on August 1, 2003 were outside of her restrictions. Tan denied purposefully creating transitional duty that was “demeaning” to claimant. Tan | ^testified that she currently has another chef in another facility, who is restricted to “limited duty,” on the same temporary transitional duty plan.
In her written reasons, the workers’ compensation judge found that the medical evidence established that claimant had been released to return to sedentary duty as of August 1, 2003 but that “there was no evidence introduced to show that [the temporary transitional duty plan] was sedentary work.” The judge further stated:
Looking at the evidence as a whole, the court finds that Ms. Tuckerson has proven that she was unable to earn 90% of her pre-injury wages as a chef, thus entitling her to supplemental earnings benefits (“SEB”) retroactive to the date her temporary total benefits were terminated. It is undisputed that Ms. Tuck-erson was released to sedentary duty by Dr. Roche-Green on July 30, 2003. However, the court finds that the housekeeping job was not a suitable job offer from a physical standpoint since Holiday failed to show that the housekeeping duties fit within the sedentary, work restriction from her doctor. Additionally, Ms. Tuckerson has received formal *631 training as a chef, thus the court finds the housekeeping position was not suitable based on her qualifications, and was merely offered to avoid payment of additional workers’ compensation benefits. Thus Ms. Tuckerson’s SEB should be based on zero earning capacity.
The workers’ compensation judge found in favor of claimant and ordered Holiday, through its insurer, Liberty Mutual, to pay claimant “supplemental earnings benefits based on a zero earning capacity retroactive to the date temporary disability benefits were terminated and continuing.” The workers’ compensation judge also found that defendant’s termination of benefits was arbitrary and capricious, and assessed a $2,000.00 penalty and $2,000.00 in attorney fees against defendants.
Defendants filed a motion for new trial, which was denied. Defendants filed a sus-pensive appeal, alleging four assignments of error: the workers’ compensation judge was manifestly erroneous and abused her discretion in finding that the modified duty position claimant was placed in on August 1, 2004[sic], was not sedentary duty an that the modified position was not suitable from a physical 17standpoint; the workers’ compensation judge was manifestly erroneous and abused her discretion in finding that claimant carried her burden of proving she was unable to earn 90% of her pre-injury wages, awarding her supplemental earnings benefits and finding that the modified position offered to claimant was not suitable based on claimant’s qualifications; the workers’ compensation judge was manifestly erroneous and abused her discretion in finding that the termination of benefits was arbitrary and capricious and in awarding penalties and attorney fees; and the workers’ compensation judge erred in making the award of supplemental earnings benefits based on a zero earning capacity “continuing,” failing to take into account the possibility of claimant finding work and earning wages or salary thus requiring a reduction or termination of supplemental earnings benefits.
The appellate court’s review of the workers’ compensation judge’s findings of fact is governed by the manifest error or clearly wrong standard. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132; Starkman v. Munholland United Methodist Church, 97-661 (La.App. 5 Cir. 1/14/98), 707 So.2d 1277, 1284, writ denied, 98-0400 (La.3/27/98), 716 So.2d 891. The manifest error rule extends to credibility determinations based upon conflicting medical testimony. Starkman, 707 So.2d at 1284. A court of appeal may not overturn a judgment of the workers’ compensation judge absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. Barber Bros. Contracting Co. v. Cuccia, 98-0675 (La.App. 1 Cir. 4/1/99), 734 So.2d 820.
Entitlement to supplemental earnings benefits is governed by La. R.S. 23:1221(3).[3] In order to recover, the em *632 ployee must first prove by a [¡^preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident. La. R.S. 23:1221(3)(a); Peveto v. WHC Contractors, et al, 93-1402, p. 5-6, 630 So.2d 689 (La.1994); Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989). “Initially, the injured employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his or her inability to earn that amount under the facts and circumstances of the individual case.” Freeman v. Poulan/Weed Eater, 93-1530, p. 7 (La.1/14/94), 630 So.2d 733, 739. In the “facts and circumstances” analysis, the court must be mindful of the jurisprudential tenet that worker’s compensation law is to be liberally construed in favor of coverage. Daigle, supra, 545 So.2d at 1007. “In determining if an injured employee has made out a prima facie case of entitlement to supplemental earnings benefits, the trial court may and should take into account all those factors which might bear on an employee’s ability to earn a wage.” Daigle, supra, 545 So.2d at 1007, quoting Gaspard v. St. Paul Fire & Marine Insurance Co., 483 So.2d 1037, 1039 (La.App. 3 Cir.1985). See, Pinkins v. Cardinal Wholesale Supply, 619 So.2d 52 (La.1993).
Once the employee’s burden is met, the burden of proof then shifts to the employer, who, if he wishes to contend that the employee is earning less than he is able to earn so as to defeat or reduce supplemental earnings benefits, bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the | ¡¡employee in his or the employer’s community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i); Freeman, supra, at p. 7; Daigle, supra, 545 So.2d at 1008-9; Allen v. City of Shreveport, 618 So.2d 386, 389 (La.1993).
Reviewing the facts related above, we conclude the claimant failed to establish by a preponderance of the evidence that she is unable to earn wages equal to 90% or more of the wages she earned before the accident. First, the record is devoid of her pre-injury wage. Second, after each of three examinations between July 30, 2003 and September 2, 2003, claimant was cleared to work at sedentary and/or light duty. On August 1, 2003, claimant returned to work and worked on “sedentary duty” position for one day. Claimant resigned from her job on August 3, 2003, citing reasons other than physical inability to perform the tasks. At trial, her resignation was related for the first time to physical inability to perform the *633 “sedentary duty” tasks. She also expressed her opinion that the transitional duty tasks were demeaning and beneath her training as a chef. Accordingly, we find the claimant failed to show that she was incapable of earning 90% of her pre-injury wages. She is not, therefore, entitled to supplemental earnings benefits.
If the employee meets his or her burden of proof, the burden shifts to the employer who, in order to defeat the employee’s claim for supplemental earnings benefits or establish the employee’s earning capacity, must prove by a preponderance of the evidence that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer’s community or reasonable geographic region. Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97) 704 So.2d 1161, 1166. Actual job placement is not required. Id.
Here, even if we were to find that claimant had established inability to earn 90% of her pre-injury wages, we would also have to find that Holiday proved that claimant was offered a light-duty job she was physically able to perform, which | inwas available to her, and within her geographic region — specifically, the transitional duty job at Holiday’s facility. Thus, Holiday suitably rebutted any showing the claimant might have made of entitlement to supplemental earnings benefits.
The remaining issue is the award of penalties and attorney’s fees for arbitrary and capricious termination of benefits. La. R.S. 23:1201(F) provides for assessment of a penalty and attorney fees where the employer or insurer has refused or failed to pay benefits due. However, the penalty and attorney fees do not apply if the claim is reasonably controverted. Thus, to determine whether the claimant’s right has been reasonably controverted and preclude the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfriv-olous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. This definition is in accord with that presently used by the lower courts to determine whether penalties and attorney fees are owed. Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98) 721 So.2d 885, 890.
Because we find, after reviewing the evidence that the arbitrary and capricious claim was reasonably controverted on the information available to the employer, we pretermit discussion of Holiday’s argument that claimant’s award for penalties and attorneys’ fees should be reversed on procedural grounds. For the foregoing reasons, the judgment of the Office of Worker’s Compensation granting supplemental earnings benefits, penalties, and attorneys’ fees is reversed. The parties are assessed their own costs for the appeal.

REVERSED.

. The plan was signed “Dr. Roche-Green/SJ.” According to claimant, a nurse with Dr. Roche-Green’s office signed the plan because Dr. Roche-Green was unavailable.'

. Claimant had a scheduled day off on August 2, 2003.

. La. R.S. 23:1221(3) provides in pertinent part:
(a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three- *632 tenths times the wages as defined in R.S. 23:1021(10).
H: % % % ‡
(c)(i) Notwithstanding the provisions of Sub-paragraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subpara-graph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region, (ii) For purposes of Subparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.